ANNA G. WEEKS, administratrix, *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk. November 13, 14, 1905. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Evidence,* Expressions of pain, Declarations of deceased persons. *Negligence. Street
Railway.*

In an action by an administrator for personal injuries incurred by the plaintiff's
intestate, evidence that after the injuries the plaintiff's intestate looked sick
and complained of pain, that during a drive in her own carriage she said that
" it seemed as though it never rode so hard before," that she complained of her
head aching, that she frequently would put one hand on her chest and one on
her back and speak of distress, that she made gestures about her head and spoke
of her head as paining her severely, is admissible as showing exclamations and
expressions manifesting the existence of present pain.

Under St. 1898, c. 535, now R. L. c. 175, § 66, after one witness has testified to cer-
tain declarations of a deceased person admissible by the terms of that act, other
witnesses may testify to similar statements of the declarant made to them.

In an action by a woman against a street railway company for injuries from being
thrown down by the sudden starting of a closed electric car with a violent and
unusual jerk while the plaintiff who had entered the car as a passenger had pro-
ceeded up the passageway of the car five or six feet without taking a seat, the
jury may find that the plaintiff was exercising ordinary care in proceeding
toward the front of the car even if she passed an empty seat which she could
have taken.

It is no evidence of negligence on the part of the conductor of a closed electric car
that while a woman passenger of ordinary strength and health who had entered
the car was proceeding on her way to a seat he gave the signal for starting the
car without waiting for her to be seated and without notifying her that he was
about to give the signal.

TORT by Elizabeth J. Glidden for personal injuries received
on August 19, 1898, while a passenger in a car of the defendant
by reason of the alleged negligence of the defendant's servants.
Writ dated November 28, 1898.

On July 6, 1899, the original plaintiff died, and the present
plaintiff, the administratrix of her estate, was admitted as plain-
tiff to prosecute the action.

At the trial in the Superior Court before *Wait,* J. one Mrs.
McLaughlin, a sister of the plaintiff's intestate who was with her
at the time of the accident, testified to the happening of the
accident as described in the opinion.

The evidence referred to in the first paragraph of the opinion was as follows :

"She complained a great deal." "She looked sick and complained of pain." During a drive of three miles from the house of the physician to her own house in her own carriage "She spoke how hard it rode; it seemed as though her carriage never rode so hard before." "She complained of her head aching and pain in the back of her head." "She would frequently place her hand, one on the chest and the other one on her back, and speak of distress." She also made gestures about her head. "She spoke of her head as paining her severely."

The defendant asked for thirteen rulings, of which the judge gave three as requested, gave five in a modified form, and refused five. The five rulings refused by the judge were as follows :

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. There is no evidence in the case that the injuries sustained by the plaintiff were caused by the carelessness or negligence of the conductor of the car.

"3. Under the circumstances existing at the moment when the conductor gave the signal to start the car he was warranted in giving the signal and it was not negligence or carelessness on his part so to do.

"4. There is no evidence in the case that the injuries sustained by the plaintiff were caused by the carelessness or negligence of the motorman of the car."

"10. It was the plaintiff's duty when she heard the bell given to start the car to seek to protect herself from falling by taking hold of the overhead straps or by immediately taking a seat."

The portion of the charge referred to at the end of the third paragraph of the opinion as sufficiently favorable to the defendant was as follows :

"And I instruct you upon that that it was the plaintiff's duty when she was once on board the car to take a place of safety as soon as reasonably possible. That is to say when a person gets on to an electric car the law assures that person a reasonable time to reach a place of safety. And it is for you to determine upon the facts in this case whether the deceased had had that opportunity and whether in any way she had neglected it.

" If you, Mr. Foreman, in getting on to a car prefer a seat in one place rather than another you are at liberty to act upon that preference, but if you have had opportunity to seat yourself somewhere else and as a reasonably prudent and careful person ought to have seated yourself somewhere else you take the chances of being injured in going to the place of your preference rather than the place which you might have taken and where you would have been safe. All that the railroad is bound to do as an exact matter of law is to give you opportunity to reach a place of safety. If you neglect to take the place of safety which a reasonably prudent person would take as soon as possible then you may be assuming the risks of being hurt while you are going somewhere else, because it is a matter of importance to the public which the law recognizes that the defendant corporation in a case like this should conduct its business reasonably."

The jury returned a verdict for the plaintiff in the sum of $5,198; and the defendant alleged exceptions.

*W. B. Farr*, for the defendant.

*E. R. Anderson*, (*A. T. Smith* with him,) for the plaintiff.

HAMMOND, J. 1. The complaints of the deceased as to pain were rightly admitted. They do not appear to have been a narration of past pain, but only such exclamations or expressions as usually and naturally accompany and manifest the existence of present pain. *Bacon* v. *Charlton*, 7 Cush. 581. *Hatch* v. *Fuller*, 131 Mass. 574. *Cashin* v. *New York, New Haven, & Hartford Railroad*, 185 Mass. 543. The same consideration disposes of the exceptions to the evidence that the deceased in riding one day in her own carriage from the doctor's office to her house "spoke about how hard it rode," and said that "it seemed as though her carriage never rode so hard before." This may well be regarded as an expression and indication of then present pain or weakness.

2. After a daughter of the deceased had testified to a conversation with her mother, in which the latter described the accident, another daughter was allowed to testify to a similar conversation with her mother. To the admission of this last conversation the defendant objected upon the ground that St. 1898, c. 535, now R. L. c. 175, § 66, under which the evidence was admitted, did not contemplate that more than one state-

ment of the deceased person should be admitted, and that to allow evidence of another similar statement would have the effect of corroboration of the first statement made by the deceased, or, in other words, would result in a duplication or multiplication as the case might be, of the deceased as a *post mortem* witness. For reasons too obvious to require a statement of them, this interpretation of the statute cannot be adopted.

3. The facts as to the circumstances of the accident are not much in dispute. The plaintiff's intestate, Mrs. Glidden, with her sister, Mrs. McLaughlin, signalled for the car to stop. It stopped, and when the former had entered the car and proceeded up the passageway five or six feet, and while the latter was still upon the platform, the car started. The evidence warranted a finding that the conductor, who was standing upon the rear platform with both women in full view, gave the signal for the car to start; that it suddenly started with a violent and unusual jerk, by which Mrs. Glidden, who was still standing, was thrown over backwards upon the floor of the car and injured. There were several passengers in the car, and it does not appear that it was necessary for the plaintiff's intestate to go so far into the car before taking a seat; but the jury may have properly found that in proceeding towards the front of the car she was exercising ordinary care even if she did pass an empty seat which she could have taken. Upon this branch of the case the instructions were sufficiently favorable to the defendant.

It is argued by the plaintiff that the conductor was negligent. In considering this question it is to be noted that we are to consider his duty, not to Mrs. McLaughlin who was still upon the step, but to the plaintiff's intestate who was well inside the car. The latter is described as a strong, healthy woman at the time, between fifty-eight and sixty years of age, showing no sign of physical or mental infirmity, and the conductor had no reason to suppose, and there was no reason to suppose, that she was other than an ordinarily careful and capable passenger. As to her we do not think that the conductor can be said to have been negligent. The woman was well inside the car, was proceeding to her seat in the usual way, and we

do not think that the conductor was under any obligation to wait until she had become seated before giving the signal to start. Nor was he bound to notify her that he was about to give the signal. The second and third requests were therefore correct in law.

One of the grounds of complaint was that the conductor was negligent by giving too soon the signal to start, and the case went to the jury authorizing them to find for the plaintiff if they found the conductor negligent in that respect. For ought that appears the verdict for the plaintiff may have been rendered upon that ground. Under the circumstances, the failure to give the second and third requests was error prejudicial to the defendant.

*Exceptions sustained.*